7

Gary Ray Fraley, Esq. SBN 080056
Brian H. Turner, Esq. SBN 288924
FRALEY & FRALEY
1401 El Camino Ave, Suite 370
Sacramento, CA 95815
Tel: (916) 485-5444
Fax: (916) 485-8969

Attorneys for Plaintiff, Anne Ansaldo

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Chapter 7 |
| Roberto Orozco Hernandez, | Case No: 14-23151-D-7 |
| Debtor. | Adv. No.: 14-02197 |
| | **PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| Anne Ansaldo, | |
| Plaintiff, | Date: May 22, 2015 |
| vs. | Time: 10:00 a.m. |
| | Courtroom: 34 |
| Roberto Orozco Hernandez, | Honorable David E. Russell |
| Defendant. | |

## FINDINGS OF FACTS

1. On or about June 28, 2013 the Defendant's car broke down and was not repairable. Defendant asked Plaintiff for help and informed Plaintiff that he was desperate. As a concerned friend Plaintiff loaned the Defendant $3,400.00 to purchase a used Lexus. See **Plaintiff's Declaration in Support of Plaintiff's Alternative Direct Testimony ("Ansaldo Decl."), ¶ 2.**

1

2. As a condition of the loan Plaintiff required Defendant to register the Lexus under Plaintiff's name. Subsequently, the Defendant informed Plaintiff that he had registered the car in his name only. However, Defendant subsequently discovered that Defendant had in fact never acquired title to the Lexus. **See Ansaldo Decl. ¶ 3.**

3. On or about July 1, 2013 the Defendant informed Plaintiff that he had retained a Bankruptcy Attorney in order to stop SMUD's garnishment on his paycheck. Defendant borrowed $700.00 from Plaintiff to start the Bankruptcy. Defendant informed Plaintiff that he would pay the attorney on a monthly basis on the balance due. Defendant later denied that he used this money to retain an attorney. **See Ansaldo Decl. ¶ 4.**

4. On or about July 1, 2013 the Defendant informed Plaintiff that the Lexus engine "blew up." The Defendant also informed Plaintiff that Defendant's cousin would repair the engine and that the Defendant will then be able to sell the Lexus for a minimum of $1,500.00. **See Ansaldo Decl. ¶ 5.**

5. At this time Defendant informed Plaintiff that he desperately needed a car and begged Plaintiff for more money. In order to obtain a second loan and in consideration for the loan Defendant then promised the following:

   a. Defendant will sell the Lexus upon completion of the repairs and give all proceeds to Plaintiff as a down payment on the purchase of another car;

   b. Defendant will get a second job in order to pay back the monies lent;

   c. Defendant will turn over all monies from his tax return, an amount he informed Plaintiff to be approximately $3,000.00; and

   d. Contact his bankruptcy attorney to ensure that (1) the Defendant can make a car purchase with financing; (2) that Plaintiff would be able to be a co-signor on the loan; and (3) that the bankruptcy would not adversely affect Defendant. **See Ansaldo Decl. ¶ 6.**

6. On or about August 22, 2013 Plaintiff co-signed on a new car loan for a Cadillac on behalf of the Defendant. The loan was with Santander. The first payment was due on October 6, 2013. Plaintiff co-signed on this loan under reasonable reliance of the previous mentioned

conditions. Defendant was aware of Plaintiff's reliance. **See Ansaldo Decl ¶ 7.**

7. On or about August 26, 2013 the Defendant informed Plaintiff that his cousin was performing the repairs on the Lexus, however the car would not pass smog and the Defendant was forced to register the car as non-operational. **See Ansaldo Decl. ¶ 8.**

8. At this time Plaintiff informed the Defendant that Plaintiff wanted to take the seller of the Lexus to small claims court because the seller had violated his responsibilities to provide a smog clearance. CVC 24007(b)(2). Defendant refused to co-operate with Plaintiff even though Plaintiff sent a demand letter to the seller of the Lexus. **See Ansaldo Decl. ¶ 9.**

9. Defendant, without consent of Plaintiff, agrees to pay half of the repair costs and the costs of the new smog check. Several months later Plaintiff learns Defendant received $700.00 from the seller of the Lexus and signed a no-recourse document with the Seller. Defendant never provides any of this information to Plaintiff. **See Ansaldo Decl. ¶ 10.**

10. On or about September 20, 2013 the Defendant informs Plaintiff that Defendant was going to be short money to make his first car payment on the Cadillac which was due on October 6, 2013. Plaintiff lends him $265.00 to make the payment. Defendant also has no money for gas and Plaintiff lends him $100.00. **See Ansaldo Decl. ¶ 11.**

11. On or about October 8, 2013 Defendant entered into two separate loan agreements with Plaintiff:
    a. The first loan agreement was unsecured and included the loan for the Lexus and all other monies loaned to the Defendant to date; and
    b. The second loan agreement was secured by the Cadillac and was for the amount originally financed through Santander. **See Ansaldo Decl. ¶ 12.**

12. At this time Defendant and Plaintiff had mutually agreed that Plaintiff would pay off the loan with Santander due to the excessively high interest rate of twenty-five percent. Both loans entered into with Defendant were under a much more reasonable interest rate of three percent. **See Ansaldo Decl. ¶ 13.**

13. In addition, Plaintiff allowed payments on both loans to be delayed to November 8, 2013. **See Ansaldo Decl. ¶ 14.**

14. After this agreement the Defendant requested Plaintiff waive payments for a short period of time on both loans in order for him to catch up on his expenses. Furthermore, Defendant requested Plaintiff put Defendant on Plaintiff's car insurance to reduce Defendant's expenses. Plaintiff agrees to do so and Defendant assures Plaintiff that Defendant will make insurance payments to Plaintiff starting in November. As a result of these various promises Plaintiff agreed to waive payments on both loans until January 8, 2014. In reliance on all promises made to date Plaintiff pays the balance of the Santander loan on October 29, 2013. **See Ansaldo Decl. ¶ 13, Santander Payoff.**

15. As agreed on or about November 26, 2013, the Defendant delivers title of the Cadillac to Plaintiff. **See Ansaldo Decl. ¶ 16.**

16. On or around January 6, 2014 the payments for both loans become due. Defendant makes no payments. Defendant makes no insurance payment. Defendant refuses to discuss the sale of the Lexus with Plaintiff, because it is "his business" and it "stresses him out." At this point the Defendant has been evasive for months and has refused to follow through on any of his promises. **See Ansaldo Decl. ¶ 17.**

17. On or around February 22, 2014 the Defendant states that he is expecting less than expected on his income tax return, however Defendant refuses to furnish any specific numbers or evidence of the tax return amount. **See Ansaldo Decl. ¶ 18.**

18. Defendant then informs Plaintiff that he is going to start his bankruptcy because Defendant "will soon be getting a much better job with the State and doesn't want anything to mess up his bankruptcy." **See Ansaldo Decl. ¶ 19.**

19. On or around March 14, 2014 the Defendant visits the Department of Motor Vehicles and reports that he has lost his title to the Cadillac. The title that he knew was in Plaintiff's possession. Defendant then applies for a duplicate title in his name only. Defendant performs this act without Plaintiff's knowledge and with the knowledge that Defendant has committed this car as collateral for a loan. **See Ansaldo Decl. ¶ 20.**

20. On or about March 24, 2014 Plaintiff hires a repossession company to gain possession of the Cadillac. It is at this time that Plaintiff discovers that the Defendant is in possession of a

PLAINTIFF'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; ADV NO. 14-2197

fraudulently obtained duplicate title. The repossession company then returns the car to the Defendant. Defendant incurred significant fees associated with this repossession. **See Ansaldo Decl. ¶ 21.**

21. The Defendant reported in his Statement of Financial Affairs that his current income to date is $6,000.00, approximately $2,000 per month. This conflicted with the information provided to Plaintiff previously.   **See Ansaldo Decl. ¶ 22.**

22. At all times, the Defendant misrepresented the facts to Defendant knowing that Plaintiff was relying on this information. The Defendant was manipulative and fraudulent in all of his dealings with Plaintiff. At all times the Defendant intended to defraud Plaintiff by filing bankruptcy and absolving Defendant of all responsibility. **See Ansaldo Decl. ¶ 23. Exhibit 17, Various Texts and Emails.**

## CONCLUSIONS OF LAW

1. The burden of proof in nondischargeability cases is by a preponderance of evidence. *Grogan v. Garner,* 498 S.S. 279, 289 (1991).

<u>Non-Dischargeability of Debts Under 11 U.S.C. § 523(a)(2)</u>

2. To except a debt from discharge under Bankruptcy Code § 523(a)(2)(A) plaintiff must show defendant's obligation to plaintiff is nondischargeable ude to "fraud."

3. The elements of a claim under § 523(a)(2)(A) are:

A plaintiff must establish that:

    (1)    The debtor made the representation;

    (2)    At the time of the representation, the debtor knew it to be false;

    (3)    The debtor made the representation with the intent and purpose of deceiving the plaintiff;

    (4)    The plaintiff justifiably relied on the representation; and,

    (5)    The plaintiff sustained a loss or damage as the proximate consequence of the representation having been made. *See* <u>Collier on Bankruptcy</u> (15th ed. Rev.) at p. 523.08.

4. The plaintiff must prove each element of his case by a preponderance of the evidence. *Grogan v. Garner*, 498 S.S. 279.

5. For a debt to be excepted from the discharge, the debtor must actually intend to defraud the creditor. *In re Tsurukawa*, 258 B.R. 192, 198 (9th Cir. BAP 2001). Intend to defraud under § 523(a)(2)(A) can be based on the totality of the circumstances when the trier of fact is convinced by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). "A court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1998).

6. A Debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A). *Caspers v. Van Horn*, 823 F.2d 1285 (8th Cir 1987). The omission, concealment, or understatement of liabilities will ordinarily constitute a materially false statement. *First National Bank v. Latona*, 260 F.2d 264 (2d Cir 1958).

7. Here, the Defendant made several materially false representations to Plaintiff over the course of several months:

   **False Representations Related to the Lexus/Unsecured Loan**
   a. Defendant misrepresented his registration of the Lexus;
   b. Defendant misrepresented his repairs on the Lexus;
   c. Defendant never intended to provide Plaintiff with a down payment for the purchase of the Cadillac;
   d. Defendant prevented Plaintiff from pursuing the seller of the Lexus in small claims court; and
   e. Defendant misrepresented his acquisition of title of the Lexus.

   **False Representations in Order to Secure the Cadillac Loan**
   a. Defendant misrepresented his intent to obtain additional employment;
   b. Defendant misrepresented his intent to provide a down payment;
   c. Defendant misrepresented how the bankruptcy would affect Plaintiff's interests;
   d. Defendant misrepresented his intent to turnover his tax return.

#### Defendant's Misrepresentation Regarding Car Insurance and Future Loan Payments

    a. Defendant failed to pay back loaned monies for car insurance; and

    b. Defendant never made any payments on any debts.

8. This testimony is convincing by a preponderance of evidence that Defendant knew that he was never going to follow through with any of his misrepresentations to Plaintiff. He concealed all these facts from Plaintiff. Furthermore, a debtor's fraudulent intent may be established by circumstantial evidence or by inferences drawn from his or her course of conduct. *In re Wills*, 243 B.R. 58, 64 (9th Cir BAP 1999). The intent to deceive may be found from the surrounding circumstances, some of which are set forth above.

9. Did Plaintiff rely on Defendant's Representations and was her reliance reasonable? The evidence supports the conclusion that it was. Plaintiff at all times had a desire to help Defendant. She continued to rely on his promises in order to give him a chance at life. She wanted him to have transportation so he could repay her and have a steady income. She was harmed because he never once made a payment back to her.

10. The preponderance of evidence supports a verdict for the Plaintiff. Each element of § 523(a)(2)(A), the representations, their falsity, the intent to deceive, the justifiable reliance and the damages, are all in favor of Plaintiff.

11. The Defendant is indebted to Plaintiff in the sum of $23,528.73 (two loans and the $795.73 lent in the 90 days prior to filing), cost of the repossession, and reasonable attorney's fees.

12. Furthermore all Debts owed to Plaintiff by Defendant are Non-Dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

13. Plaintiff also is entitled to immediate turnover of the Cadillac and any other such relief as the court deems proper.

Respectfully submitted,

DATED: May 15, 2015

                                                  Brian H. Turner, Esq.
                                                  Fraley & Fraley

Fraley & Fraley
1401 El Camino Ave, Suite 370
Sacramento, CA 95815
(916) 485-5444